Case: 1:26-mj-000107
Assigned To: Judge Faruqui, Zia M.
Assign. Date: 6/29/2026
Description: COMPLAINT W/ARREST WARRANT

## STATEMENT OF FACTS

1.     On June 11, 2026, at approximately 0108 hours, your affiant, a Metropolitan Police Department ("MPD") officer assigned to the Third District, and other members of MPD and other federal agencies were patrolling in the 300 block of Florida Avenue NE, Washington, D.C.  Your affiant was in full uniform and was with other MPD officers in an unmarked police cruiser equipped with police lights and an audible siren.

2.     Members of law enforcement observed a black Mercedes-Benz E-Class sedan bearing DC license plate ▮▮▮▮▮ drive past the unmarked police car at a rate of speed that was conspicuously faster than the flow of traffic.  Officers conducted a query of the affixed license plate through a law enforcement database that revealed that the DC license plate expired as of February 6, 2025.

3.     While the Mercedes was facing eastbound waiting on the traffic light at 7th Street and Florida Avenue NE, officers pulled behind the Mercedes.  Immediately afterwards, the vehicle made an illegal right hand turn on red from the left lane and proceeded south on 7th Street NE. Officers attempted to effectuate a stop to enforce the traffic violation by activating their emergency lights and sirens.  The vehicle then turned right into the 600 block of Orleans Place NE, going westbound. The driver of the black Mercedes sedan pulled over and stopped briefly as if to acknowledge the traffic stop. Officers stopped the patrol vehicle and disengaged their emergency equipment.   However, before officers could exit, the Mercedes suddenly sped westbound in the 600 block of Orleans Place NE.

4.     From their location, officers observed the same Mercedes pull over near the intersection of 6th Street NE and Orleans Street NE, Washington, D.C., and illegally park next to

the entrance of a driveway on the street.  Officers pulled up to the Mercedes, and approached on foot, activating their emergency lights a second time before exiting.

5.      DAIQUON JONES ███████████ the driver, who was identified by his Maryland Conceal Carry card, exited the Mercedes to where officers were waiting on the side of the vehicle. Officers detained him for fleeing the original traffic stop.  Approximately, a minute later, your affiant walked over to the front of the Mercedes and shined a flashlight towards the open driver's side window. Your affiant observed an empty Kydex firearm holster in plain view on the driver's seat of the vehicle.

***BEJAMIN BISSAHOYO***

6.      Following the discovery of the holster in plain view, officers then began to remove the passengers from the vehicle starting with the rear driver's side passenger, BENJAMIN BISSAHOYO, Jr. ███████████ who they directed to stand at the trunk.  The rear passenger-side occupant, MEKO BROWN (DOB: ███████ was also removed from the vehicle and directed to stand at the rear of the vehicle.  Similarly, the front passenger was removed from the vehicle and directed on where to stand.

7.      BISSAHOYO was given directions to keep his hands visible, but he did not comply. As a result, an agent with the United States Customs and Border Patrol ("CBP") began a protective pat down of BISSAHOYO.  The agent felt a metal object in BISSAHOYO's waistband, and recovered a firearm, see below *Figure 1*. When law enforcement attempted to place BISSAHOYO in handcuffs, he tried to flee towards the front of the car. Officers took BISSAHOYO to the ground and placed him into handcuffs.

8.      The firearm recovered from BISSAHOYO's waistband was identified as a Glock, model 17, .9-millimeter caliber pistol, bearing serial number CBZV733. The firearm was loaded

with one (1) round of ammunition in the chamber and twenty (20) rounds of ammunition in the twenty-four (24) round capacity magazine.  The Glock 17 was also equipped with a Franklin Armory G-S173 Binary Firing System Slide and Trigger.  The Glock 17 appeared to be fully functional and operable, capable of being fired with the use of a single hand, with a barrel length of less than twelve inches, and intended to expel bullets by means of explosion. Further, based on your affiant's training and experience, I am aware that a Binary Firing System Slide and Trigger alters the semi-automatic firearm so that two shots are fired with each pull of the trigger: that is, one shot fires when the trigger is pulled and another shot when the trigger is released.



*Figure 1 - Glock 17 from BENJAMIN BISSAHOYO*

9.	It is illegal in the District of Columbia for a person under the age of 21, like BISSAHOYO, to register a handgun, such as a Glock 17, or to obtain a concealed carry permit.

BISSAHOYO was arrested and charged with Carrying a Pistol without a License, Possession of an Unregistered Firearm and Ammunition, Resisting Arrest and other offenses.

10.     Search incident to arrest of BISSAHOYO resulted in a blue pill bottle with no name or prescription, which contained sixty-seven (67) suspected Oxycodone Hydrochloride pills, from his jacket pocket (*Figure 2*) and $8,739 in U.S. currency (mostly 1's, 5's, 20's and 50's) that was found in multiple pants pockets with the currency being sorted and banded with rubber bands (*Figure 2*).  Investigators determined that these pills were suspected Oxycodone Hydrochloride based on their appearance, color, shape, and markings. Your affiant is aware that Oxycodone Hydrochloride is classified under the Controlled Substances Act as a Schedule II controlled substance.  Accordingly, it requires a valid prescription.  No prescription was recovered, and the pill bottle was not marked in the normal fashion with the pharmacy and prescribed patient's name and other information.



*Figure 2 – Pills and Currency Seized from BENJAMIN BISSAHOYO*

11. Based on your affiant's training and experience, the amount and manner in which the suspected Oxycodone Hydrochloride pills were carried, coupled with the large amount of U.S. Currency (in relatively small denominations), along with the possession of a firearm, is more consistent with possession with the intent to distribute rather than personal use.

12. Law enforcement learned upon querying WALES/NCIC that BISSAHOYO had an outstanding warrant for his arrest for Assault with a Dangerous Weapon-Gun/Possession of a Firearm During a Crime of Violence in D.C. Superior Court case number 2026 CF3 009015.

### *MEKO BROWN*

13. As the agent was patting down BISSAHOYO, another CBP agent conducted a protective pat down of BROWN and felt what he immediately recognized as a firearm in BROWN's front waistband area. BROWN was then placed in handcuffs. MPD Officer Larsen photographed the firearm, which was partially visible protruding from BROWN's waistband area (*Figure 3*).



*Figure 3 - MEKO BROWN with the Glock 19*

14.     Officers recovered the firearm, shown below in *Figure 4*, which was identified as a Glock, model 19, .9-millimeter pistol, bearing serial number BXRG843. The firearm was loaded with one (1) round of ammunition in the chamber and fourteen (14) rounds of ammunition in the fifteen (15) round capacity magazine.



*Figure 4 - Glock 19 which was recovered from MEKO BROWN*

15.     BROWN initially identified himself as ▆▆▆▆▆▆ DOB: ▆▆▆▆▆▆ and represented that he had a valid D.C. concealed carry permit. Officers contacted the Real Time Crime Center and learned that a ▆▆▆▆▆▆ with a slightly different date of birth of ▆▆▆▆▆▆ has a valid carry permit.  The Glock 19, however, was not registered.  Officers placed BROWN (who they believed at the time to be ▆▆▆▆▆▆ under arrest for a pistol license violation. Later, after BROWN was fingerprinted, officers learned his true identity was MEKO BROWN rather than ▆▆▆▆▆▆ A check with the Real Time Crime Center revealed that MEKO BROWN did not have a valid carry permit.

16.     A criminal records check revealed that MEKO BROWN pled guilty in 2021 to Carrying a Pistol without a License, in D.C. Superior Court case number 2020 CF2 007364 and was sentenced to 366 days of incarceration. Further, in 2023, BROWN pled guilty to Assault with a Dangerous Weapon and Unlawful Possession of a Firearm (Prior Conviction Greater Than One Year) in D.C. Superior Court case number 2022 CF3 001912. BROWN was sentenced to 36 months' incarceration on the Assault with a Dangerous Weapon count, and 14 months'

incarceration on the Unlawful Possession of a Firearm count, to run concurrently with each other. BROWN is currently under supervision for this case. Thus, at the time of his arrest on June 11, 2026, BROWN would have been aware that he had been previously convicted of a crime that was punishable by a term of imprisonment of more than one year.

### *DAIQUON JONES*

17.    As JONES was standing outside of the Mercedes, sorting through cards in his wallet, your affiant asked JONES where his firearm was located due to the empty holster in the driver's seat. JONES looked down at his right jacket pocket and said words to the effect of "Everything's right here." MPD Officer Young reminded JONES of officers' prior instruction to report if he had any weapons. JONES then stated words to the effect of "Nothing that's illegal in the car." JONES further advised that he was a concealed carry permit holder and provided his D.C. permit identification number but was unable to produce a physical D.C. permit card at that time.

18.    Officer Young recovered a firearm from JONES' right jacket pocket. A query in reference to JONES determined that the firearm was registered to JONES and he had a valid Conceal Carry Permit in the District of Columbia. DAIQUAN JONES was arrested and charged with Pistol License Violation.

19.    Your affiant is aware that there are no firearms or ammunition manufacturers in the District of Columbia. Therefore, all firearms and ammunition described above necessarily traveled in interstate commerce before they were recovered in the District of Columbia.

20.    Based on the foregoing facts, I submit that there is probable cause to believe that on June 11, 2026, MEKO BROWN violated 18 U.S.C. § 922(g)(1), which makes it a crime for any person who has been convicted of a crime punishable by imprisonment for a term exceeding

one year to possess any firearm or ammunition that has been shipped or transported in interstate or foreign commerce.

_____
THOMAS DUNN, OFFICER
METROPOLITAN POLICE DEPARTMENT


Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone, the 29th day of June 2026.


_____
HONORABLE ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE